**In re V–MARK SOFTWARE, INC., SECURITIES LITIGATION.**

**Civil Action No. 95–12249–EFH.**

United States District Court,
D. Massachusetts.

June 17, 1996.

Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, for Morteza Ahmadifer, Ernest Hack.

Mitchell H. Kaplan, Kevin J. Lesinski, Diana K. Lloyd, Choate, Hall & Stewart, Boston, MA, for Vmark Software, Inc.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

On October 13, 1995, this securities class action was brought on behalf of purchasers of

the common stock of the Defendant VMARK Software ("VMARK" or the "Company"). The Complaint alleges that during the period July 11, 1995 through October 10, 1995 (the "Class Period") the defendants made false and misleading statements regarding VMARK's sales and earnings for its 1995 fiscal third quarter.[1] The Company filed a motion to dismiss the Consolidated and Amended Class Action Complaint for: (1) failure to state a claim upon which relief can be granted; and (2) failure to plead fraud with particularity. For the following reasons, this Court denies the defendants' motion to dismiss.

The plaintiffs allege the following facts. Defendant VMARK is a Westboro, Massachusetts corporation that provides software and services for the client/server business market. The Company has approximately eight million shares outstanding and its common stock is listed and traded on the NASDAQ National Over the Counter Market. On January 27, 1995, VMARK announced that it had agreed to acquire the Easel Corporation ("Easel"). Easel is a supplier of software tools and services for the client/server market that are primarily used by large organizations. VMARK announced on June 15, 1995 that it had completed its acquisition of Easel and stated in a press release that, although it had taken a one-time acquisition charge of $5 to $6 million dollars, the acquisition would be beneficial for the Company.

VMARK announced on July 10, 1995 that second quarter earnings would fall 30 percent below first quarter earnings.[2] In an interview with Bloomberg Business News ("Bloomberg"),[3] that became public on July 11, 1995, Defendant Walsh said that the lower sales were a result of weak sales in the western United States. He also said that the Company had instituted personnel changes to correct weaknesses in its sales force. Bloomberg further reported that Defendant Walsh said that the Company would likely meet analysts' earning estimates of 32 cents to 33 cents a share in the third quarter on revenue of $21 million to $22 million. Furthermore, the article quoted Defendant Walsh as saying "[w]e are comfortable with that," indicating that Defendant Walsh, a senior Company official, and VMARK expressly ratified the Wall Street analysts' projections. The plaintiffs also point out an additional August 16, 1995 VMARK press release that optimistically appraised the integration of Easel's sales force and products into VMARK.

On October 10, 1995, NASDAQ halted trading in VMARK stock pending a news announcement by VMARK. The Company on that date then announced that it expected to report a loss of between $.02 and $.05 per share for the 1995 third quarter on expected revenue of $15.8 million to $16 million. When VMARK reported the final results for its 1995 fiscal third quarter on October 30, 1995, it disclosed that it had lost $0.13 per share on revenues of $15.557 million. During the Class Period, VMARK's common stock had risen to over $18 per share by August 18, 1995. On October 9, 1995, the common stock had closed at $14.50. By October 11, 1995, VMARK stock was trading at $7.50 per share.

Plaintiffs allege that as a direct and proximate result of the defendants' false and misleading statements, the plaintiffs were damaged in connection with their purchases of VMARK common stock during the class period. One of the thrusts of the plaintiffs'

---

1. The plaintiffs filed a Consolidated and Amended Class Action Complaint on January 18, 1996 that alleged: (1) violation of Section 10(b) and Rule 10b–5 of the Exchange Act against all defendants; and (2) violation of Section 20(a) of the Exchange Act against the Defendants Capeless and Walsh. The plaintiffs named as defendants James J. Capeless, VMARK's President and Chief Executive Officer and a member of the Board of Directors, and James K. Walsh, VMARK's Executive Vice President and Chief Operating Officer, Treasurer, General Counsel and member of the Board of Directors.

2. In the earlier June 15, 1995 press release, the Company reported that VMARK had recorded 25 consecutive quarters of growth in revenue and operating income (before non-recurring charges) through its last reported quarter ending April 2, 1995.

3. Bloomberg Business News is a prominent provider of on-line financial information to media outlets and brokerage firms.

allegations is that corporate directors knew or recklessly disregarded the fact that the integration of Easel into VMARK would cause the Company to lose third quarter sales. As a result, it is alleged that Defendant Walsh had no basis to predict that VMARK would meet analysts' earning estimates.

The defendants, however, assert that the Complaint should be dismissed on the ground that the alleged statements and omissions upon which the plaintiffs base their claims of securities fraud amount to nothing more than cautiously optimistic forward looking statements about VMARK's business prospects and, thus, that such allegations do not constitute violations of the federal securities laws. VMARK also maintains that the Complaint should be dismissed because the plaintiffs have failed to plead fraud with the particularity that Fed.R.Civ.P. 9(b) requires.

*Were the Alleged False and Misleading Statements Nothing More Than Optimistic Forward Looking Statements?*

■ After the parties had filed several motions in support of and in opposition to the defendants' motion to dismiss, the plaintiffs filed a *Motion for Leave to File a Second Supplemental Memorandum in Support of Opposition to Motion to Dismiss Complaint* on May 22, 1996. In their motion, the plaintiffs, *inter alia,* called this Court's attention to the recent ruling of the United States Court of Appeals for the First Circuit in *Shaw, et al. v. Digital Equipment Corp., et al.,* 82 F.3d 1194 (1st Cir.1996). In *Shaw,* the plaintiffs in that case also alleged that the defendants [the Digital Corporation and others] had committed actionable fraud by making optimistic statements to the public

and to the media concerning that company's prospects during the class period. *Shaw, et al. v. Digital Corp., et al,* 82 F.3d at 1217 (1st Cir.1996). The First Circuit, in that decision, stated:

> Thus, a claim that a fraud was perpetrated on the *market* can draw no sustenance from allegations that defendants made overly-optimistic statements, if those statements are ones that any reasonable investor (ergo, the market) would easily recognize as nothing more than a kind of self-directed corporate puffery.

*Id.* at 1218.[4] In its analysis in *Shaw,* the First Circuit recognized that not every expression of corporate optimism, especially those found to mere "puffing," could be legally sufficient to support a claim under the securities laws. *Id.* at 1217–18 & n. 32. The Court in *Shaw* ruled that the defendants' announcements were nothing more than general forward looking optimistic statements about a company's future prospects. *Id.* at 1217–19.[5]

In this case, however, Defendant Walsh specifically told Bloomberg that the Company would meet Wall Street analysts' earning estimates and mentioned definite earnings and precise revenue numbers. A specific statement of this kind not only distinguishes this matter from *Shaw* but it also cannot be called mere "puffing." In fact, the plaintiffs advised the Court that the actual numbers quoted to Bloomberg would have represented the most profitable quarter in the history of VMARK, as well as the largest amount of quarterly revenues ever recorded in the Company's history. The Court rules that Defendant Walsh's July 11, 1995 statements to Bloomberg are legally sufficient to support a claim of securities fraud.

4. This Court notes that in its ruling the United States Court of Appeals for the First Circuit mentioned that its assumptions about market behavior were particularly relevant to the widely followed stocks of larger corporations traded on the New York Stock Exchange ("NYSE"). *Id.* at 1218–19. VMARK is a smaller corporation that is listed and traded on the NASDAQ. VMARK is not as actively traded and closely followed as a larger NYSE listed company like the Digital Corporation.

5. For example, a Digital official was quoted as saying that the company's transition to selling a

new kind of chip was "going reasonably well" and that the company "should show progress quarter over quarter, year over year." This executive also stated that the company was "basically on track" and "very healthy." There was a statement by Digital's CEO that he was "confident that DEC was pursuing the right strategy." The head of Digital's European operations (although not a defendant in that matter) was quoted as saying that he was "pretty optimistic" that the company would "be able to stabilize [its] revenue" and "start to grow revenue." *Id.* at 1218–19.

*Did the Plaintiffs Plead Fraud with the Particularity that Fed.R.Civ.P. 9(b) Requires?*

█ VMARK argues that the plaintiffs' Complaint is based on conclusory allegations that charge that the defendants intentionally or recklessly made false statements about the company's fiscal 1995 third quarter. The defendants assert that the plaintiffs have provided no factual allegations to support their claim that VMARK or others knew that any statement was false or misleading when made. The plaintiffs, however, maintain that they have alleged a strong factual predicate for an inference of fraud.

After reviewing the plaintiffs' Complaint, the Court concludes that they plead fraud with sufficient particularity. Plaintiffs' Complaint provides a reasonable inference that the defendants had knowledge that VMARK's third quarter financial results would not meet expectations on account of the integration of Easel into VMARK. As the First Circuit stated in *Shaw*:

> We have no intention here of diluting the stringent mandate of Rule 9(b). But in determining the adequacy of a complaint under that rule, we cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence. Rule 9(b) proscribes the pleading of "fraud by hindsight," but neither can plaintiffs be expected to plead fraud with complete insight.

*Id.* at 1225. (Citation omitted).

For the reasons stated above, the Court denies the defendants' motion to dismiss.

SO ORDERED.